UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

CHARLES PETTITT,                                **REPORT AND**
                                                **RECOMMENDATION**
       Plaintiff,

v.                                              17-CV-00640-WMS-JJM

CHIARI & ILECKI, LLP,

       Defendant.
_____

    Plaintiff Charles Pettitt alleges that defendant Chiari & Ilecki, LLP violated the Fair Debt Collection Practices Act ("FDCPA", 15 U.S.C. §§1692 *et seq*.) and abused process by seeking to collect a 1992 judgment which was no longer enforceable. Complaint [1], Points V, VI.[1] Before the court are the parties' cross motions for summary judgment [67, 68]. Having reviewed the parties' submissions [67, 68, 70-73, 81, 82, 84-86] and heard oral argument on April 26 and May 17, 2019, for the following reasons I recommend that the motions be granted in part and denied in part.

## BACKGROUND

    On April 16, 1992, Ann Giardina Hess, a family law attorney, obtained a judgment in Lockport City Court against plaintiff Pettitt in the amount of $1110.55 [68-2]. In 2009 Ms. Hess contacted attorney William Ilecki of Chiari & Ilecki to discuss collections on several of her old files. Ilecki Declaration [67-17], ¶4. She mentioned the 1992 Pettitt judgment. Id., ¶4. Ilecki claims that Hess told him that Pettitt had signed a written acknowledgment of debt in 2006, and that

---

[1]   Bracketed references are to the CM/ECF docket entries. Unless otherwise indicated, page references are to numbers reflected on the documents themselves rather than to the CM/ECF pagination.

"relying on the good faith representation from Ms. Hess, a practicing lawyer and officer of the court, [he] accepted the file". Id., ¶¶9-10.

Although Hess submitted an Affidavit stating that "[i]n 2006, Plaintiff signed a document that both acknowledged the judgment and extended the statute of limitations" ([68-13], ¶4), at her subsequent deposition she walked that statement back: "I don't recall Mr. Pettitt signing a document. I have no specific knowledge of that". [71-2], p. 87. When asked whether she had "ever see[n] the acknowledgment", she replied "I don't know"; and when asked whether she was "representing a personal knowledge that he signed this", she replied "I can't say I have personal knowledge". Id., pp. 117, 124-25. When asked "what is your basis for believing that you had it", she explained "[b]ecause the matter went forward. I gave it to Bill [Ilecki]. He proceeded. If he didn't have the right documents, he wouldn't have proceeded with that . . . . He wouldn't proceed if he didn't have everything he needed". Id., p. 117. However, Ilecki testified that he did *not* receive the acknowledgment from Hess, and that he had never seen it. Ilecki deposition [71-1], p. 56.

On May 11, 2015, six years after Ilecki's conversation with Hess, Chiari & Ilecki served Pettitt with an Information Subpoena and Restraining Notice relative to the 1992 judgment. [68-8]. On July 13, 2016, Chiari & Ilecki filed a motion to compel compliance with the Information Subpoena. [68-9]. On August 25, 2016, Lockport City Court Judge Thomas DiMillo issued an Order granting the motion and instructing Pettitt to provide responses to the Information Subpoena within 30 days. [67-4]. On November 3, 2016, Chiari & Ilecki filed a motion seeking issuance of a warrant for Pettitt's arrest, due to his non-compliance with the Order. [68-10].

On January 3, 2017, Pettitt's attorney, Seth Andrews, contacted Ilecki, requesting proof regarding the validity of Pettitt's debt. Ilecki Declaration. [67-17], ¶¶19-20. When Ilecki

asked Hess for the acknowledgment of debt, she told him that she had destroyed her file in an office move. Id., ¶21. Ilecki then withdrew the motion seeking issuance of a warrant. Id., ¶23.

Pettitt commenced this action in July 2017 [1]. In February 2018, he moved to vacate the August 2016 Order pursuant to CPLR Rule 5015(a)(3), (4), and (5), arguing that the "Order was granted by fraud and misrepresentation as to the true status of the judgment". Id., ¶14. On July 5, 2018 Judge DiMillo denied Pettitt's motion, finding that "the Plaintiff had a good faith belief the written acknowledgment existed and was in his client's possession", that "Chiari and Ilecki, LLP brought the Motion to Compel based upon this good faith belief", and that Pettitt "has not shown, in any way, that Chiari & Ilecki, LLP intentionally committed fraud, misrepresentation or misconduct in moving for and obtaining the Order to Compel" [67-10], p. 2.  On August 29, 2018, plaintiff filed a notice of appeal, but withdrew the appeal on January 16, 2019. Ilecki Declaration [67-17], ¶41.

## DISCUSSION

**A.    Summary Judgment Standard**

"When faced with cross-motions for summary judgment, a district court is not required to grant judgment as a matter of law for one side or the other . . . . Rather, the court must evaluate each party's motion on its own merits." Heublein, Inc. v. United States, 996 F.2d 1455, 1461 (2d Cir. 1993). "To obtain a summary judgment there must be no genuine issue as to any material fact and the moving party must be entitled to a judgment as a matter of law . . . . Summary judgment is proper when, after drawing all reasonable inferences in favor of a non-movant, no reasonable trier of fact could find in favor of that party . . . . There must be more than a scintilla of evidence in the non-movant's favor; there must be evidence upon which a fact-finder could reasonably find for the non-movant." Id.

**B.      Pettitt's FDCPA Claims**

"To establish a claim under the FDCPA . . . a plaintiff must prove that (1) the plaintiff is a consumer; (2) the defendant is a debt collector; and (3) the defendant committed some act or omission that violates the FDCPA." Dzganiya v. Cohen Ehrenfeld Pomerantz & Tenenbaum, LLP, 2018 WL 2247206, *9 (S.D.N.Y. 2018). The parties agree that Pettitt is a consumer and that Chiari & Ilecki is a debt collector. Although Pettitt alleges several FDCPA violations, "[a] single violation is sufficient to establish liability under the Act". Wiener v. Bloomfield, 901 F. Supp. 771, 778 (S.D.N.Y. 1995). Therefore, rather than separately analyzing each alleged violation, I will focus on 15 U.S.C. §1692f, which prohibits debt collectors from using "unfair or unconscionable means to collect or attempt to collect any debt".

Section 1692f(1) provides that "[w]ithout limiting the general application of the foregoing, the following conduct is a violation of this section: (1) The collection of any amount . . . unless such amount is . . . or permitted by law". "Because the FDCPA is remedial in nature, its terms must be construed in liberal fashion." Vincent v. The Money Store, 736 F.3d 88, 98 (2d Cir. 2013). Therefore, if the improper collection of debts is prohibited, then improper attempts to collect such debts are likewise prohibited. See Brignola v. Home Properties, L.P., 2013 WL 1795336, *5 (E.D. Pa. 2013) ("the FDCPA proscribes attempts to collect an amount not permitted by law").

Although Chiari & Ilecki now argues that the Information Subpoena served in May 2015 [68-8] does not "implicate[ ] the FDCPA", because it "does not deal with the debt itself" (Chiari & Ilecki's Memorandum of Law [71-4], p. 2, n.1), earlier it admitted that the Information Subpoena "require[d] information relative to satisfaction of a Judgment against [Pettitt]". Ilecki Affirmation [67-6], ¶2. Accordingly, by moving to compel compliance with the Information Subpoena on July 13, 2016 [67-3] and again on November 3, 2016 [67-6], Chiari & Ilecki was

clearly attempting to collect the 1992 judgment. Therefore, I must determine whether the 1992 judgment was collectible in 2016 - for if Pettitt "did not owe any debt, then . . . attempts to collect the . . . alleged debt against Plaintiff would be statutory violations". Brignola, *5.[2]

New York Civil Practice Law and Rules ("CPLR") §211(b) provides that "[a] money judgment is presumed to be paid and satisfied after the expiration of twenty years from the time when the party recovering it was first entitled to enforce it. This presumption is conclusive, except as against a person who within the twenty years acknowledges an indebtedness, or makes a payment, of all or part of the amount recovered by the judgment." Although contained in CPLR Article 2 ("Limitations of Time"), §211(b) "is not a Statute of Limitations, but is a rule of law. The term cannot be extended nor can the presumption be rebutted by any other means other than those set forth". Palazzo v. Hyde, 82 Misc. 2d 765, 765-66 (Sup. Ct. Oneida Co. 1975).

Section 211(b) "is a condition precedent which, upon the passing of 20 years, creates a conclusive presumption that a money judgment is paid and abolishes the underlying right behind the claim, rather than merely suspending the remedy". New York State Higher Education Services Corp. v. Fabrizio, 73 A.D.3d 158, 161 (3rd Dept. 2010) (citing Siegel, New York Practice, §§34,35 [4th ed.]).[3] See also Brinkman v. Cram, 175 A.D. 372, 373 (1st Dept. 1916), aff'd, 225 N.Y. 720 (1919) ("a presumption of payment arises, which is conclusive except where within that period a payment has been made on the judgment or a written acknowledgment of the indebtedness is made and signed by the person to be charged").

---

[2]     Any claim that the Information Subpoena itself violated the FDCPA is time barred, since a plaintiff must sue "within one year from the date on which the violation occurs". 15 U.S.C. §1692k(d).

[3]     While there is a limited exception to this rule in the case of judgments for federally funded student loans (Fabrizio, 73 A.D.3d at 162-63), that exception does not apply in this case.

It is undisputed that no payments were made on the 1992 judgment. Pettitt's Statement of Material Facts [68-2], ¶11; Chiari & Ilecki's Response [71-3], ¶11. Therefore, the judgment was properly collectable only if Pettitt had signed a "written acknowledgment of the indebtedness", and he denies that he did. Pettit Affidavit [68-3], ¶5. While the Hess Affidavit states that Pettitt executed an acknowledgment of the debt in 2006, in light of her contradictory deposition testimony, that statement is a "mere scintilla" of evidence which is insufficient to create a genuine issue of material fact as to whether Pettitt had acknowledged the debt. *See* Rojas v. Roman Catholic Diocese of Rochester, 660 F.3d 98, 106 (2d Cir. 2011) ("in certain cases a party's inconsistent and contradictory statements transcend credibility concerns and go to the heart of whether the party has raised *genuine* issues of material fact to be decided by a jury") (emphasis in original). *See also* Contemporary Mission, Inc. v. U.S. Postal Service, 648 F.2d 97, 107 n. 14 (2d Cir. 1981) ("[a]n opposing party's facts must be material and of a substantial nature, not . . . conjectural [or] speculative").

Accordingly, I conclude that the 1992 judgment was uncollectable at the time that Chiari & Ilecki sought to collect it by enforcing the Information Subpoena in 2016. Judge DiMillo's finding that Chiari & Ilecki "had a good faith belief the written acknowledgment existed" and did not "intentionally commit[ ] fraud, misrepresentation, or misconduct in moving for and obtaining the Order to Compel" ([67-10], p. 2) does not necessarily insulate Chiari & Ilecki from liability, since "[t]he FDCPA is a strict liability statute: The plaintiff does not need to show intentional conduct on the part of the debt collector." Arias v. Gutman, Mintz, Baker & Sonnenfeldt LLP, 875 F.3d 128, 134 (2d Cir. 2017). *See also* Pittman v. J.J. MacIntyre Co. of Nevada, 969 F. Supp. 609, 613 (D. Nev. 1997) ("[t]he debt had been satisfied with the creditor and, therefore, no debt existed. Whether the defendant had actual knowledge of the satisfaction prior to making further attempts to

collect goes to the defendant's culpability . . . . Because the FDCPA is a strict liability statute, the defendant's culpability is a consideration only in computing damages under the FDCPA. *See* 15 U.S.C. §1692k(b)").

### C. Chiari & Ilecki's "Bona Fide Error" Defense

15 U.S.C. §1692k(c) provides that "[a] debt collector may not be held liable in any action brought under this subchapter if the debt collector shows by a preponderance of evidence that the violation was not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error".

The "bona fide error defense requires the debt collector to make three showings: (1) it must show that the presumed FDCPA violation was not intentional; (2) it must show that the presumed FDCPA violation resulted from a bona fide error . . . and (3) it must show that it maintained procedures reasonably adapted to avoid any such error." Abdollahzadeh v. Mandarich Law Group. LLP, 922 F.3d 810, 815 (7th Cir. 2019). "The failure to meet any one of those three requirements is fatal to the defense." Edwards v. Niagara Credit Solutions, Inc., 584 F.3d 1350, 1353 (11th Cir. 2009).

"The first prong of the bona fide error defense is a subjective test while the second and third prongs are objective tests . . . . For the first prong of intent, a debt collector need only show that its FDCPA violation was unintentional, not that its actions were unintentional . . . . a debt collector may avail itself of the bona fide error defense because it had no intent to violate the FDCPA, although its actions were deliberate . Campbell v. Hall, 624 F. Supp. 2d 991, 1003 (N.D. Ind. 2009); Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich LPA, 559 U.S. 573, 599 (2010)

("lawyers may invoke the bona fide error defense . . . where a violation results from a qualifying factual error"). In this case, there is no evidence that Chiari & Ilecki intended to violate the FDCPA.

"The second prong of the bona fide error defense is that the defendant must show that its violation of the act was a bona fide error . . . . In other words, the defendant must show that the error resulting in a violation was made in good faith and objectively reasonable." Chiari & Ilecki's Memorandum of Law [67-18], pp. 18-19 (*quoting* Arnold v. Bayview Loan Servicing, LLC, 659 Fed. App'x 568, 571 (11th Cir. 2016) and Edwards, 584 F.3d 1350, 1353 (11th Cir. 2009)). Judge DiMillo's conclusion that Chiari & Ilecki had a "good faith belief" that "the written acknowledgment existed" ([67-10], p. 2) does not necessarily mean that its belief was objectively reasonable. "'[G]ood faith' requires honesty, not the exercise of due care." In re AppOnline.com, Inc., 321 B.R. 614, 624 (E.D.N.Y. 2003), aff'd, 128 Fed. App'x 171 (2d Cir. 2004); Bank of New York v. Welz, 118 Misc. 2d 645, 648 (Sup. Ct. N.Y. Co. 1983).

Chiari & Ilecki argues that it "was entitled to rely on the creditor's representation as to the validity of the debt". Chiari & Ilecki's Memorandum of Law [67-18], pp. 14-15 (*citing* Clark v. Capital Credit & Collection Services, Inc., 460 F.3d 1162, 1174 (9th Cir. 2006)). However, it may do so only "within reasonable limits", such as where the creditor "has provided accurate information in the past". Clark, 460 F.3d at 1174. In this case, Hess had not presented accurate information in the past, because she was not an existing client of Chiari & Ilecki at the time of the 2009 conversation. Ilecki deposition [71-1], p. 51. While Ilecki believed that Hess "knew that a signed acknowledgment would extend the statute of limitations . . . . She was familiar with the law" (id., pp. 58-9), Hess testified that she did not "know squat about collections and all that other stuff, which is why I have somebody that does the collections for me". Hess deposition [71-2], p. 7. When asked whether she had "any understanding of what effect legally that [an acknowledgment] has on a

judgment", she replied "No . . . . I've heard the term but I certainly could not have explained anything to you about that at that time". Id., pp. 64, 66-7.

"The final prong, which encompasses the procedures component, involves a two - step inquiry: first, whether the debt collector maintained - i.e., actually employed or implemented - procedures to avoid errors: and, second, whether the procedures were reasonably adapted to avoid the specific error at issue." Campbell, 624 F. Supp. 2d at 1003; Abdollahzadeh, 922 F.3d at 817. Ilecki testified that if a judgment has less than 10 years' collectability, he routinely asks the client whether the debtor has made a payment on the judgment or has signed a written acknowledgment of the debt, and only accepts the judgment for collection if the answer is yes. Ilecki Affidavit [67-17], ¶¶64-5.

While that may qualify as a "procedure", the decisive question is whether it was a procedure "reasonably adapted to avoid the specific error at issue" - namely the filing of motions (to compel compliance with an information subpoena relating to an uncollectable judgment) made *seven years* after the alleged conversation. Since "the reasonableness inquiry is uniquely fact bound and susceptible of few broad, generally applicable rules of law", the court must take "a flexible, fact-specific approach to the reasonableness inquiry". Abdollahzadeh, 922 F.3d at 817.

Resolving all reasonable inferences in favor of Pettitt (as I must in considering Chiari & Ilecki's motion), I cannot say as a matter of law that Chiari & Ilecki's reliance upon Hess's seven-year-old statement that Pettitt had acknowledged the debt, without more, was objectively reasonable. *See* 10A Wright, Miller, *et al*., Federal Practice and Procedure (Civil), §2729 (4th ed. 2019) ("even when there is no dispute as to the facts, it usually is for the jury to decide whether the conduct in question meets the reasonable-person standard"); Lissau v. Southern Food Service, Inc.,

159 F.3d 177, 184 (4th Cir. 1998) ("[w]hen the reasonableness of conduct is in question, summary judgment is rarely appropriate").

### D.  Pettitt's Abuse of Process Claim

In response to defendant's argument that his claim for abuse of process fails as a matter of law (defendant's Memorandum of Law [67-18], Point III), plaintiff has abandoned that claim. *See* Plaintiff's Memorandum of Law [70-10], p. 2, n. 1.

### CONCLUSION

For these reasons, I recommend that the court grant partial summary judgment dismissing Pettitt's claim for abuse of process and determining that: (1) collection of the 1992 judgment against Pettitt was not permitted by law in 2016; (2) in 2016 Chiari & Ilecki did not intend to violate the FDCPA; and (3) in 2016 Chiari & Ilecki had a subjective good faith belief that Pettitt had acknowledged the debt in 2006; but that the motions for summary judgment [67, 68] otherwise be denied.

Unless otherwise ordered by Judge Skretny, any objections to this Report and Recommendation must be filed with the clerk of this court by June 13, 2019. Any requests for extension of this deadline must be made to Judge Skretny. A party who "fails to object timely . . . waives any right to further judicial review of [this] decision". Wesolek v. Canadair Ltd., 838 F. 2d 55, 58 (2d Cir. 1988); Thomas v. Arn, 474 U.S. 140, 155 (1985). Moreover, the district judge will ordinarily refuse to consider *de novo* arguments, case law and/or evidentiary material which could have been, but were not, presented to the magistrate judge in the first instance. Patterson-Leitch Co. v. Massachusetts Municipal Wholesale Electric Co., 840 F. 2d 985, 990-91 (1st Cir. 1988).

The parties are reminded that, pursuant to Rule 72(b) and (c) of this Court's Local Rules of Civil Procedure, written objections shall "specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for each objection . . . supported by legal authority", and must include "a written statement either certifying that the objections do not raise new legal/factual arguments, or identifying the new arguments and explaining why they were not raised to the Magistrate Judge".  Failure to comply with these provisions may result in the district judge's refusal to consider the objections.

Dated: May 30, 2019

/s/ Jeremiah J. McCarthy
JEREMIAH J. MCCARTHY
United States Magistrate Judge