UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK



UNITED STATES DISTRICT COURT
FILED
DEC 16 2019
MARY C. LOEWENGUTH, CLERK
WESTERN DISTRICT OF NY

CHARLES PETTITT,

                Plaintiff,

        v.

CHIARI & ILECKI, LLP,

                Defendant.

**DECISION AND ORDER**

1:17-CV-00640 EAW

## BACKGROUND

Plaintiff Charles Pettitt ("Plaintiff") commenced this action on July 12, 2017, alleging that defendant Chiari & Ilecki, LLP ("Defendant") violated the Fair Debt Collection Practices Act ("FDCPA") under 35 U.S.C. § 1962 *et seq.*, by attempting to collect a debt owed by Plaintiff to family law attorney Ann Giardina Hess ("Hess") based on a judgment in the amount of $1,110.55 obtained over 20 years ago—on April 16, 1992. (Dkt. 1).

The case was originally assigned to United States District Judge Lawrence J. Vilardo, who issued an order of recusal on July 14, 2017. (Dkt. 3). The case was then reassigned to United States Senior District Judge William M. Skretny, who issued a referral order to United States Magistrate Judge Jeremiah J. McCarthy for all pre-trial matters, including dispositive motions, pursuant to 28 U.S.C. § 636(b)(1). (Dkt. 17; Dkt. 69).

On May 30, 2019, Judge McCarthy issued a Report and Recommendation (the "R&R"), recommending that Defendant's motion for summary judgment be partially granted, dismissing Plaintiff's claim for abuse of process. (Dkt. 87 at 10). Additionally, Judge McCarthy determined that:

> (1) collection of the 1992 judgment against [Plaintiff] was not permitted by law in 2016; (2) in 2016 [Defendant] did not intend to violate the FDCPA; and (3) in 2016 [Defendant] had a subjective good faith belief that [Plaintiff] had acknowledged the debt in 2006.

(*Id.*). Based on these conclusions, Judge McCarthy recommended that the pending motions for summary judgment be otherwise denied. (*Id.*). On June 3, 2019, Judge Skretny recused himself, and the matter was reassigned to the undersigned. (Dkt. 88). Plaintiff and Defendant both filed objections to the R&R. (Dkt. 89; Dkt. 91). The parties filed responses on July 22, 2019. (Dkt. 95; Dkt. 96). Familiarity with the R&R and underlying facts of this matter, as set forth in the R&R, is assumed for purposes of this Decision and Order.

After conducting a careful *de novo* review of the R&R, and the record in this matter, *see* 28 U.S.C. § 636(b)(1)(C), the Court adopts the R&R in its entirety. This Decision and Order addresses the specific objections raised by each party.

## DISCUSSION

**I.    Judgment Collectability**

Judge McCarthy concluded that the 1992 judgment was uncollectable. (Dkt. 87 at 6). Judge McCarthy found Hess's deposition testimony was "insufficient to create a genuine issue of material fact as to whether [Plaintiff] had acknowledged the debt." (*Id.*)

(citing *Rojas v. Roman Catholic Diocese of Rochester*, 660 F.3d 98, 106 (2d Cir. 2011) ("in certain circumstances a party's inconsistent and contradictory statements transcend credibility concerns and go to the heart of whether the party has raised *genuine* issues of material fact to be decided by a jury.")).

Defendant objects on the grounds that Judge McCarthy erred by making a credibility determination as to Hess, arguing there was additional evidence from which a reasonable jury could find Plaintiff had signed a written acknowledgment. (Dkt. 91 at 4-6). Specifically, Defendant cites Plaintiff's statement that funds were removed from his restrained bank account, and a draft of the signed written acknowledgment. (*Id.* at 5). The Court finds Defendant's arguments are without merit.

Plaintiff's deposition testimony regarding the removal of funds from his Bank of America account does not raise a genuine issue of material fact as to whether Plaintiff signed a written acknowledgment. Plaintiff testified that his account was restrained in connection with the 1992 judgment by Defendant. (*See* Dkt. 67-5 at 89). Plaintiff testified the account contained $300.00, but that Bank of America had removed $100.00 in "service fees for the paperwork," $5.00 a month as a service charge, and $15.00 a month after the account had insufficient funds. (*Id.* at 92-96). As such, Plaintiff only testified that the funds were removed by Bank of America for service charges. He did not testify that the funds were removed by a creditor executing the 1992 judgment pursuant to a signed written acknowledgment. Defendant has not submitted evidence demonstrating otherwise.

- 3 -

Accordingly, the removal of funds does not raise an issue of fact as to whether Plaintiff signed a written acknowledgment of the 1992 judgment.

The draft template of the written acknowledgment also does not raise a genuine issue of material fact as to whether Plaintiff signed a written acknowledgment. The template is a draft of a "Turnover Authorization and Agreement." (Dkt. 67-16 at 3-4; Dkt. 68-12 at 1-2). The draft provides that Plaintiff authorizes Bank of America to withdraw and forward to Hess "all monies contained in accounts maintained in [his] name." (*Id.* at 1). The draft also provides that upon the forwarding of such monies, Hess authorizes the removal of the restraint upon Plaintiff's account. (*Id.*). Significantly, the template is not dated, is not signed by either Plaintiff or Hess, and does not include an acknowledgment of the 1992 judgment.

Additionally, it is unlikely the Court can even consider the draft template. Pursuant to Federal Rule of Evidence 901(a), the proponent of an item of evidence "must produce evidence sufficient to support a finding that the item is what the proponent claims it is." Fed. R. Evid. 901(a). However, Hess, the purported author, testified that she had no "independent recollection" as to whether the document was ever signed. (Dkt. 70-3 at 33). Additionally, there is no testimony from Lisa the "techie," who located the document pursuant to the subpoena, authenticating the template. As such, because the template is not in admissible evidentiary form, it cannot be used to raise a genuine issue of material fact as to whether Plaintiff signed a written acknowledgment. *See GlobalRock Networks, Inc.*

*v. MCI Communs. Servs.*, 943 F. Supp. 2d 320, 335 (N.D.N.Y. 2013) (evidence not in admissible evidentiary form so as to be considered on summary judgment because it had not been properly authenticated through testimony or an affidavit from its author); *Lachira v. Sutton*, No. 3:05cv1585 (PCD), 2007 WL 1346913, at *3 (D. Conn. May 7, 2007) (plaintiff had not met burden of authenticating letter, in part, where plaintiff did not reference letter in her affidavit, attest date on which letter was written, and state whether letter was actually mailed).

Additionally, the Court finds Judge McCarthy did not err in rejecting Hess's statements about the purported authorization. In her affidavit, Hess affirmatively represented that she had obtained Plaintiff's signed written acknowledgment. (*See* Dkt. 68-13). Hess's affidavit, in relevant part, provides:

> 4.    In 2006, Plaintiff signed a document that both acknowledged the judgment and extended the statute of limitations. Likewise, the document released his bank account for purposes of paying the judgment, to the extent the account contained the money, less any bank charges.
> . . .
> 7.    If I had not obtained Plaintiff's acknowledgment of the judgment, I would never have retained [Defendant] to collect on the judgment, as Mr. Ilecki confided that he did not want to collect any judgment files unless he had approximately ten years to enforce same.

(*Id.* at 1-2). However, at her deposition, Hess consistently testified that she did not have personal knowledge as to her statements in her affidavit. (*See* Dkt. 68-11 at 33 (upon being asked whether she witnessed Plaintiff sign the acknowledgment, Hess answers "I don't recall"), 34 (upon being asked whether she had physically ever seen the acknowledgment,

Hess answers "I don't know"), 35 (upon being asked whether she had personal knowledge for her statement in her affidavit that Plaintiff had signed a written acknowledgment, Hess answers "Do I recall, no"), 41 (upon being asked whether she recalled holding a signed copy of Plaintiff's written acknowledgment, Hess answers "I don't recall"); Dkt. 70-3 at 126 (upon being asked whether she had personal knowledge as to her affidavit statement that Plaintiff signed the written acknowledgment, Hess answers "I can't say personally – I can't say I have personal knowledge")).

In fact, Hess testified that her affidavit was based not on her own personal knowledge, but rather based on the fact that Defendant had proceeded with collection activities. (*See* Dkt. 70-3 at 118 ("If he didn't have the right documents, he wouldn't have proceeded with that. He always made sure he had what he needed. I turned the things over. He wouldn't proceed if he didn't have everything he needed. That was the history of these many cases.")). At the summary judgment stage, Hess's affidavit, which was not based on personal knowledge, is insufficient to create an issue of fact. *See Fitzgerald v. Henderson*, 251 F.3d 345, 361 (2d Cir. 2001) (a party opposing summary judgment "must present affidavits, based on personal knowledge, . . . setting forth such facts as would be admissible in evidence, and as to which the affiant would be competent to testify"); *United States v. Private Sanitation Indus. Ass'n*, 44 F.3d 1082, 1084 (2d Cir. 1995) (an affidavit

not based upon personal knowledge does "not suffice to create an issue of fact precluding summary judgment").[1]

In light of the above, Judge McCarthy correctly found that the record here presented the case where "a party's inconsistent and contradictory statements transcend credibility concerns and go to the heart of whether the party has raised *genuine* issues of material fact to be decided by a jury." *Rojas*, 660 F.3d at 106. Plaintiff denied having signed a written acknowledgment (Dkt. 68-3 at ¶ 5), and Defendant has not submitted admissible evidence raising a genuine issue of material fact. Accordingly, the Court adopts Judge McCarthy's finding that the judgment was uncollectable.

## II.  <u>Bona Fide Error Defense</u>

The bona fide error defense allows debt collectors to avoid liability under the FDCPA "if the debt collector shows by a preponderance of evidence that the violation was not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error." 15 U.S.C. § 1692k(c). In order to avail itself of this defense, "a defendant must prove: (1) the presumed FDCPA violation was not intentional; (2) the presumed FDCPA violation resulted from a bona fide error; and (3) that [the defendant] maintained procedures reasonably adapted to avoid any such

---

[1]     Defendant also argues that Judge McCarthy erred by not taking into account that Hess had "reaffirmed her affidavit, line by line, on cross examination." (Dkt. 91 at 6). When asked if she reaffirmed paragraph number four in her affidavit, Hess answered "yes." (Dkt. 71-2 at 103). However, Hess did not correct or explain her earlier statements denying she had personal knowledge as to the statements contained in her affidavit.

error." *Lee v. Kucker & Brush LLP*, 958 F. Supp. 2d 524, 529 (S.D.N.Y. 2013) (quotation and citation omitted). "To survive summary judgment, [the non-moving party] must make a showing sufficient to establish the existence of, or at least a factual question as to, every element of the defense." *Id.*

## A.    First Prong—Not Intentional Violation

Judge McCarthy found there was no evidence that Defendant intended to violate the FDCPA. (Dkt. 87 at 8). Plaintiff objects on the ground that the bona fide error defense requires the underlying conduct be intentional, not the violation. In support of this argument, Plaintiff cites *Jerman v. Carlisle, McNillie, Rini, Kramer & Ulrich LPA*, 559 U.S. 573 (2010). (Dkt. 89 at 6-8). However, the *Jerman* decision was limited in scope, resolving what types of mistakes constitute "bona fide errors" under the second prong of the defense, *see Jerman*, 559 U.S. at 583-84, not whether the defendant's underlying conduct was intentional under the first prong of the defense. The Court held bona fide errors excluded mistakes of law. *Id.* at 587. The Court's discussion was limited to supporting the proposition that Congress did not intend to make the bona fide error defense available for mistakes of law, not the broader proposition that the bona fide error defense is categorically unavailable where the underlying conduct is intentional.

Although the Second Circuit has not declared its view, it appears courts are generally in agreement that the first prong of the bona fide error defense requires the violation of the FDCPA, not the underlying conduct, be "not intentional." *See*

- 8 -

*Abdollahzadeh v. Mandarich Law Grp., LLP*, 922 F.3d 810, 815 (7th Cir. 2019) (a defendant "must show only that its FDCPA *violation* was unintentional, not that its *actions* were unintentional" (quotation and citation omitted)); *Arnold v. Bayview Loan Servicing, LLC*, 659 F. App'x 568, 570 (11th Cir. 2016) (must show FDCPA violation, not underlying conduct, was unintentional); *Garcia v. Law Offices Howard Lee Schiff, P.C.*, 401 F. Supp. 3d 241, 252 (D. Conn. 2019) (finding not intentional violation satisfied where no evidence the defendant intended to send debtor letter containing mistake); *Moore v. Express Recovery Serv., Inc.*, No. 1:16-cv-00126-TC-EJF, 2019 WL 77325, at *4 (D. Utah Jan. 2, 2019) ("The element depends on the 'lack of specific intent to violate the act.'" (citing *Johnson v. Riddle*, 443 F.3d 723, 728 (10th Cir. 2006) ("[T]he only workable interpretation of the intent prong of the FDCPA's bona fide error defense is that a debt collector must show that the violation was unintentional, not that the underlying act itself was unintentional."))); *Lee*, 958 F. Supp. 2d at 529 (not intentional violation where no evidence that the defendant "knowingly misrepresent[ed] [the plaintiff's] debt"); *Marisco v. NCO Fin. Sys.*, 946 F. Supp. 2d 287, 293 (E.D.N.Y. 2013) ("If violations of the FDCPA required deliberate or purposeful intent, then the bona fide error defense's 'not intentional' element would tend towards surplusage." (citation and quotation omitted)); *Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich*, No. 1:06 CV 1397, 2011 WL 1434679, at *10 (N.D. Ohio April 14, 2011) (Supreme Court's *Jerman* decision left undisturbed the district court's prior finding that where the defendant's noncompliance was not intentional, the violation

was "not intentional" for purposes of bona fide error defense); *McLean v. Ray*, No. 1:10-cv-456, 2011 WL 1897436, at \*6 (E.D. Va. May 18, 2011) (bona fide error defense available to defendant who did not knowingly pursue collection matter with intent to violate FDCPA), *aff'd*, 488 F. App'x 677 (4th Cir. 2012).

Here, the record demonstrates that Defendant made a mistake of fact, not a mistake of law. Defendant relied upon information provided by Hess and, at the time of the collection activities, Defendant had no knowledge that Hess lacked a signed written acknowledgment. (*See* Dkt. 68-7 at 23-28). Plaintiff does not argue the record demonstrates otherwise. (*See* Dkt. 89). Accordingly, the Court adopts Judge McCarthy's finding that the violation was not intentional.

## B.     Second Prong—Bona Fide Error

As an initial matter, the parties disagree as to the preclusive effect of Lockport City Court Judge Thomas DiMillo's order that Defendant had a good faith belief as to the existence of a written acknowledgment. As such, the Court addresses this argument first.

"Under the full faith and credit statute, 'a federal court must give to a state-court judgment the same preclusive effect as would be given that judgment under the law of the State in which the judgment was rendered.'" *Graham v. Select Portfolio Servicing, Inc.*, 156 F. Supp. 3d 491, 505 (S.D.N.Y. 2016) (citing *Migra v. Warren City Sch. Dist. Bd. Of Educ.*, 465 U.S. 75, 81 (1984)). "Therefore, New York law governs this Court's collateral estoppel analysis." *Id.* "Under New York law, the doctrine of issue preclusion only applies

if (1) the issue in question was actually and necessarily decided in a prior proceeding, and (2) the party against whom the doctrine is asserted had a full and fair opportunity to litigate the issue in the first proceeding." *Colon v. Coughlin*, 58 F.3d 865, 869 (2d Cir. 1995).

"Issue preclusion . . . bars 'successive litigation of an issue of fact or law actually litigated and resolved in a valid court determination essential to the prior judgment,' even if the issue recurs in the context of a different claim." *Taylor v. Sturgell*, 553 U.S. 880, 892 (2008). "The party asserting collateral estoppel bears the burden of showing that the identical issue was previously decided, while the party against whom the doctrine is asserted bears the burden of showing the absence of a full and fair opportunity to relitigate in the prior proceeding." *Ho-Shing v. Budd*, No. 17 Civ. 4633 (LGS), 2018 WL 2269245, at *5 (S.D.N.Y. May 17, 2018).

Plaintiff moved to vacate the state order requiring compliance with the information subpoena pursuant to CPLR 5015(a)(3), alleging that Defendant had procured the order to compel by fraud, misrepresentation, or misconduct. (*See* Dkt. 67-10 at 2). Judge DiMillo denied Plaintiff's request and found that Defendant "had a good faith belief the written acknowledgment existed and was in [Hess's] possession." (*Id.*). Judge DiMillo's Decision and Order, in relevant part, stated:

> Plaintiff's counsel at the time, Chiari & Ilecki, LLP, argued that the motion to obtain the Order to Compel was made in good faith based upon a conversation William Ilecki, of counsel, had with his client, also an attorney, confirming there existed a written acknowledgment of debt which was in his client's possession. The court finds that the Plaintiff had a good faith belief the written acknowledgment existed and was in his client's possession.

(Dkt. 67-10 at 2). In concluding that Defendant acted in good faith, Judge DiMillo cited the conversation between William Ilecki ("Ilecki") and Hess. Judge DiMillo did not cite any other fact that would be a basis for finding Ilecki had a good faith belief that the signed acknowledgement existed and, thus, Judge DiMillo necessarily found that the conversation had occurred. *See Kravitz v. Abrams, Fensterman, Fensterman, Eisman, Formato, Ferrera & Wold, LLP*, No. 2:14-cv-7031 (DRH)(AYS), 2019 WL 1471128, at *4 (E.D.N.Y. Apr. 3, 2019) (in federal FDCPA action, issue of whether "Defendants misrepresented the debt or communicated false credit information" had been "actually and necessarily decided" where state breach of contract action found "Plaintiff was liable for the debt in question" and, thus, necessarily found that "the lawsuit seeking to collect the debt could not have been predicated on false credit information").

Nonetheless, even if the Court were not to give preclusive effect to Judge DiMillo's finding, the Court finds there are no triable issues of fact as to whether the conversation occurred. In his declaration, Ilecki stated that Hess had contacted him in 2009. (Dkt. 67-17 at ¶ 4). Although Hess testified that she could not recall whether she had personally called Ilecki, and that it was unlikely she would have contacted Ilecki herself (Dkt. 70-3 at 48-50), she does not deny the 2009 conversation occurred (*see id.*). As such, Plaintiff has not rebutted Defendant's evidence and, thus, there are no triable issues of fact as to whether the 2009 conversation occurred. *See Motiva Enterprise LLC v. W.F. Shuck Petroleum*, No. 3:10-cv-793 (JCH), 2012 WL 601245, at *14 (D. Conn. Feb. 22, 2012) ("[The defendant's]

assertion that he does not remember signing the document is not, in itself, sufficient to create a material issue of fact to defeat [the plaintiff's] Motion for Summary Judgment."); *Petrunti v. Cablevision*, No. 08-CV-2277 (JFB) (AKT), 2009 WL 5214495, at *11 (E.D.N.Y. Dec. 30, 2009) ("Plaintiff's lack of recollection is insufficient . . . to create a triable issue of fact.").

The Court now turns to the second prong of the bona fide error defense. Judge McCarthy found that Defendant had a subjective good faith belief that Plaintiff had acknowledged the debt in 2006 (Dkt. 87 at 10), but could not conclude "as a matter of law that [Defendant's] reliance upon Hess's seven-year-old statement that [Plaintiff] had acknowledged the debt, without more, was objectively reasonable" (*id.* at 9).

Plaintiff argues the error was objectively unreasonable as a matter of law because "no reasonable fact finder could conclude that it was reasonable for an attorney to rely on his unaided recollection of a conversation from seven years ago," in light of Defendant's volume of cases. (Dkt. 89 at 12). In support, Plaintiff cites to *McCollough v. Johnson*, 637 F.3d 939 (9th Cir. 2011). (Dkt. 89 at 16). However, the Court finds *McCollough* is distinguishable. In *McCollough*, the Ninth Circuit determined it was objectively unreasonable for the defendant to rely on their client where the client's contract with the defendant "expressly disclaimed 'the accuracy or validity of data provided' and instructed that [the defendant] was 'responsible to determine [its] legal and ethical ability to collect' the account," and considering the defendant's own electronic files informed the defendant

that the debtor "had asserted a statute of limitations defense to a collection action filed against him in 2005 over the same debt." *McCollough*, 637 F.3d at 949.

In contrast, here, Hess never expressly disclaimed the accuracy or validity of her statements to Ilecki. Additionally, unlike the defendant in *McCollough*, Ilecki's own files did not indicate that Plaintiff had previously asserted a statute of limitations defense or some other objection to the 1992 judgment. (*See* Dkt. 67-17 at ¶ 69 ("Plaintiff never contested the debt, never responded to the information subpoenas or any correspondence from [Defendant's] office, and never appeared with respect to the motion.")). It was not until January 2017 that Defendant was made aware of a potential issue with the judgment's collectability and, upon confirming Hess lacked proof of a signed written acknowledgment, Defendant immediately ceased collection activities. (*Id.* at ¶¶ 73-75). Accordingly, Plaintiff's reliance on *McCollough* is misplaced.

Plaintiff also argues the error was objectively unreasonable as a matter of law because "Hess was not an accurate source of information regarding a purported acknowledgment of the 1992 judgment" as she knew nothing about collections work. (Dkt. 89 at 13-14). In support of his argument, Plaintiff cites to *Miller v. Updton, Cohen & Slamowitz*, 687 F. Supp. 2d 86, 101 (E.D.N.Y. 2009) for the proposition that "in order to be entitled [to] the benefit of reasonable reliance, . . . the debt collector [must show] a history of past reliability, [and must] also show reputational quality and the use of rigorous procedures." (Dkt. 89 at 14). However, *Miller* neither involved nor discussed the

- 14 -

availability of the bona fide error defense. Instead, *Miller*'s discussion was limited to an attorney's independent duty to review in order to avoid liability under FDCPA § 1692(e) for making a "false representation or implication that any individual is an attorney or that any communication is from an attorney." *Miller*, 687 F. Supp. at 94.

Plaintiff does not cite to any factually analogous case demonstrating Defendant's error was objectively unreasonable as a matter of law. The Court's own research reveals the facts here are unlike those in cases where courts have determined the errors were objectively unreasonable as a matter of law. Those cases involve facts demonstrating the defendants possessed information or knowledge that put them on notice as to their error. *See Hepsen v. Resurgent Capital Servs., L.P.*, 383 F. App'x 877, 883 (11th Cir. 2010) (despite its practice of listing name of client as "creditor," objectively unreasonable for debt collector to do so where it had knowledge from prior dealings that debt was owed to a different entity); *Micks v. Gurstel Law Firm, P.C.*, 365 F. Supp. 3d 961, 977 (D. Minn. 2019) (objectively unreasonable for debt collector to not conduct any factual investigation despite receiving two calls from debtor's employer indicating he had paperwork relating to debtor's bankruptcy discharge and court release, and court paperwork indicating debtor's wages should not have been garnished). By contrast, here, there is no evidence that Defendant knew the signed written acknowledgment no longer existed or that the debt was not otherwise uncollectable.

On the other hand, Defendant argues the error was objectively reasonable as a matter of law. Defendant asserts that Judge McCarthy's conclusion was in error because it "rests on the faulty premise that [Ilecki] suddenly recommenced collection proceedings in 2016 after ignoring the file for 7 years." (Dkt. 91 at 16). Defendant cites to the firm's activity report which demonstrates Defendant worked on this case from April 2009 through January 2017 (Dkt. 91-1 at 1-2), and Plaintiff's own testimony confirmed he had received many letters from Defendant over the years (Dkt. 67-5 at 115-34). Additionally, Defendant argues the error was objectively reasonable as a matter of law because: (1) the FDCPA does not require debt collectors to independently verify the debt and debt collectors may rely on representations from their clients; and (2) Ilecki, informed by his thirty-years of experience, reasonably relied on Hess, a practicing attorney. (*Id.* at 9, 11).

In support of its argument that it was objectively reasonable for Ilecki to rely on Hess's statement, Defendant cites to *Abdollahzadeh*, 922 F.3d at 812. However, *Abdollahzadeh* is distinguishable. There, the defendant had relied on reports generated by its client, which included the last-payment date for debtors, and the reports were "created using proprietary software." *Id.* at 812-13. Additionally, there, the client had submitted an affidavit attesting to the accuracy of its reports. *Id.* at 817. In finding the error was objectively reasonable as a matter of law, the Seventh Circuit distinguished the case as one in which the defendant relies on the "account information itself," and not "a communication from the creditor." *See id.* at 816. Here, Defendant did not rely on the

written acknowledgment itself. Instead, Defendant relied on a communication from Hess, the creditor. As such, *Abdollahzadeh* does not demonstrate that Defendant's reliance on Hess's representations was objectively reasonable as a matter of law.

Reasonable jurors could disagree as to whether Defendant's error was reasonable. As such, the Court agrees with Judge McCarthy that it cannot determine whether Defendant's mistake was objectively reasonable as a matter of law. Accordingly, whether Defendant's reliance on Hess's statement was objectively reasonable is a question of fact properly reserved for the jury and, thus, precludes summary judgment. *See Werbicky v. Green Tree Servicing, LLC*, No. 2:12-cv-01567-JAD-NJK, 2016 WL 1248697, at *11 (D. Nev. Mar. 28, 2016) (FDCPA does not impose duty for debt collectors to independently authenticate instruments comprising mortgage loan so question of whether reasonable for loan servicer to rely on representations of its creditor-client is a question of fact precluding summary judgment); *Eide v. Coltech, Inc.*, 987 F. Supp. 2d 951, 966 (D. Minn. 2013) (although collections agreements supported finding that defendant's error was reasonable, still a question of fact as to whether reasonable for debt collector to rely on creditor's representations); *Beattie v. D.M. Collections, Inc.*, 754 F. Supp. 383, 391 (D. Del. 1991) (question of fact as to whether defendant reasonably relied on information provided by creditor and debtor's father that the debt was owed by debtor).

## C.    Third Prong—Maintained Procedures Reasonably Adapted

The third prong requires a two-step inquiry: (1) "whether the debt collector maintained—*i.e.*, actually employed or implemented—procedures to avoid errors," and (2) "whether the procedures were reasonably adapted to avoid the specific error at issue." *Campbell v. Hall*, 624 F. Supp. 2d 991, 1003 (N.D. Ind. 2009); *Abdollahzadeh*, 922 F.3d at 817. With this prong, the Court concludes there are disputed issues of fact as to both steps.

It does not appear that Judge McCarthy definitively resolved whether Defendant had actually employed or implemented procedures under the first step. (*See* Dkt. 87 at 9) (when a "judgment has less than 10 years' collectability, [Ilecki] routinely asks the client whether the debtor has made payment on the judgment or has signed a written acknowledgment of debt, and only accepts the judgment for collection if the answer is yes," and "[this] *may* qualify as a 'procedure'" (emphasis added)). Instead, Judge McCarthy found that "the decisive question" is whether under the second step, Defendant's procedure was "reasonably adapted to avoid the specific error at issue—namely[,] the filing of motions []to compel compliance with an information subpoena relating to an uncollectable judgment. . . ." (*Id.* at 9). As to this step, Judge McCarthy found there were issues of material fact precluding summary judgment. (*See id.* at 10). This Court agrees.

Plaintiff argues Defendant's "policy of ceasing collection activities after notification from the debtor that it was pursuing time-barred debt is not reasonably adapted to avoid

collecting on time-barred debt. By definition, this notification can only come after

Defendant has already violated the FDCPA." (Dkt. 96 at 22). In support of his argument,

Plaintiff cites to *Vangorden v. Second Round, L.P.*, 897 F.3d 433, 441 (2d Cir. 2018). In

*Vangorden*, the defendant argued that the debtor could not state § 1692e false or misleading

representations and § 1692f unfair practices claims where the debtor did not first dispute

the validity of the debt as required under § 1692g. *Vangorden*, 897 F.3d at 439. In

responding to the defendant's assertion that "in the real world, creditors and debt collectors

make mistakes, and sometimes initiate collection activities against persons who do not owe

a debt," the Second Circuit explained that the "the [only] protection the FDCPA affords

debt collectors in those circumstances is the affirmative [bona fide error] defense, not an

immunity from suit inferred from the dispute notice provision of § 1692g." *Id.* As such,

the Second Circuit necessarily concluded that the bona fide error defense was available

even where the FDCPA violation occurs before the debtor's notification that the debt was

not valid. *Id.* at 440. Thus, *Vangorden* does not support Plaintiff's broad proposition that

making the bona fide error defense available where a debt collector ceases collection

activity after notification by the debtor "perverts the intent of the FDCPA by shifting the

burden to consumers to bring violations to the attention of debtors." (Dkt. 96 at 22).

By contrast, Defendant avers that because it "has never been found to have collected

on a stale debt . . . there can be no question that [Defendant] maintains reasonably adapted

procedures to ensure the debts it collects are timely." (Dkt. 91 at 14). Defendant's

procedures include confirming there are at least 10 years remaining on the debt and asking whether the debtor has made a payment or signed a written acknowledgment of the debt. (Dkt. 67-17 at ¶¶ 64-65). The Court cannot conclude as a matter of law the procedures at issue were reasonably adapted to avoid collecting a time-barred debt because questions as to whether a debt collector maintained reasonably adapted procedures are factual questions properly reserved for the jury. *See Richburg v. Palisades Collection LLC, et al.*, 247 F.R.D. 457, 467-68 (E.D. Pa. 2008) (whether defendant's development of nationwide survey of statutes of limitations constituted a procedure reasonably adapted to avoid collecting time-barred debt is a question of fact); *Blarek v. Encore Receivable Mgmt.*, No. 06-C-0420, 2007 WL 984096, at *11-14 (E.D. Wis. Mar. 27, 2007) (issue of fact as to whether procedures reasonably adapted to avoid error of misidentifying creditor where defendant's various procedures included requiring employees to complete FDCPA training, to pass test on FDCPA, and to sign FDCPA acknowledgment contacting consumers; sending notice to employees that violation of FDCPA may result in termination; and relying on clients to provide accurate information regarding debtors); *Gonzalez v. Lawent*, No. 03C2237, 2005 WL 1130033, at *7-8 (N.D. Ill. April 28, 2005) (issue of fact as to whether procedures reasonably adapted to avoid error of collecting debt not owed where evidence that: defendant relied on oral agreement with client to provide accurate information and refer only current and collectible debts; there was a low percentage of unauthorized incorrect

charges in the accounts referred to defendant; and defendant immediately ceased collection activities upon becoming aware that accounts contained errors).

Accordingly, whether Defendant maintained procedures that were reasonably adapted to avoid the error at issue is a question of fact properly reserved for the jury and, thus, precludes summary judgment.

## CONCLUSION

For the reasons set forth above, the Court adopts the R&R, grants summary judgment in favor of Defendant on Plaintiff's abuse of process claim, and otherwise denies Plaintiff's and Defendant's motions for summary judgment (Dkt. 67; Dkt. 68).


SO ORDERED.

ELIZABETH A. WOLFORD
United States District Judge

Dated:      December 16, 2019
            Rochester, New York